IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEMP EARL MITCHELL, | ) | |
| | ) | Civil Action No. 18 – 223J |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| ERIC BRADLEY, *Warden,* | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION[1]

Petitioner Kemp Earl Mitchell ("Petitioner") is a federal prisoner[2] currently confined at the Federal Correctional Institution ("FCI") Loretto in Cresson, Pennsylvania. On December 27, 2017, while confined at FCI Fort Dix in Fort Dix, New Jersey, he was issued Incident Report 3071868, charging him with Possession of a Hazardous Tool (Cellular Phone), Prohibited Act Code 108.[3] On November 6, 2018, Petitioner initiated the instant federal habeas corpus

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of a final judgment. (ECF Nos. 8, 18.)

[2] Petitioner is currently serving a 144-month prison sentence for Conspiracy to Distribute and Possess with the Intent to Distribute Heroin out of United States District Court for the District of Maryland. *See* United States v. Mitchell, No. 1:12-cr-00550 (D. Md.). Petitioner's criminal docket sheet indicates that he was granted compassionate release and his sentence was reduced to time served on August 17, 2020.

[3] Code 108 prohibits the possession, manufacture, introduction, or loss of a hazardous tool. Hazardous tools are defined as "tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device." BOP Program Statement 5270.09, Inmate Discipline, p.44, available at http://www.bop.gov/policy/progstat/5270_009.pdf (last visited August 18, 2020).

1

proceedings pursuant to 28 U.S.C. § 2241, challenging the disciplinary hearing process. Petitioner seeks expungement of the Incident Report and restoration of 40 days good conduct time. Because the Court finds that Petitioner was afforded the full panoply of procedural protections to which he was entitled, his Petition for Writ of Habeas Corpus (ECF No. 3) will be denied. Alternatively, the Petition will be dismissed as moot.

### A. Disciplinary Hearing Proceedings

On December 27, 2017, at 9:00 p.m., an officer from FCI Fort Dix was conducting unit rounds when he encountered Petitioner standing near an exit door. The officer ordered Petitioner to submit to a pat search. As Petitioner turned around and extended his arms, the officer observed Petitioner drop a small, black cell phone and charger into a cleaning bucket. When the officer finished the pat search, he retrieved the cell phone from the bucket. The officer preserved the chain of custody of the phone and took photos of it. (Resp't Exh. 2, ECF No. 17-5, pp.5, 12-13.)

The officer wrote Incident Report 3071868, charging Petitioner with Possession of a Hazardous Tool (Cellular Phone), Prohibited Act Code 108, on December 27, 2017 at 9:40 p.m.. (Resp't Exh. 2; ECF No. 17-5, pp.7-9.) It is noted that Petitioner was provided with a copy of the report and notified of the charge against him on December 28, 2017 at 7:49 p.m. Id., p.7. The Incident Report was subsequently rewritten on December 30, 2017 at 8:30 a.m.,[4] and it is noted that Petitioner was provided with a copy of it and advised of his rights at 4:20 p.m. that same day. Id., pp.5-6. When asked if he wanted to make a statement on his behalf, Petitioner

---

[4] According to Respondent, the Incident Report was rewritten because the original was on an outdated form. *See* (ECF No. 17, p.3, n.7); *see also* (Resp't Exh. 2; ECF No. 17-5, p.6) (Noting "[t]his Incident Report was suspended on 12-28-2017 due to information placed on an outdated form.")

2

stated, "When he patted me down I had nothing on me. The phone is not mine." Id., p.6. Petitioner requested no witnesses stating that "there were none." Id. After finding that the information contained within the Incident Report was correctly written and the charge valid, the investigator referred the matter to a Unit Discipline Committee ("UDC") for further disposition. Id.

On January 8, 2018, at 2:45 p.m., Petitioner appeared before the UDC. Id., p.5. When asked if he wanted to make a statement, Petitioner stated, "The incident report is not true and I did not have a cell phone." Id. The UDC forwarded the matter to the Disciplinary Hearing Officer ("DHO") for further disposition. Id. On that same date, Petitioner was provided with a form titled Notice of Discipline Hearing Before the DHO and a form titled Inmate Rights at Discipline Hearing, both of which he signed and both of which are dated January 8, 2018. Id., pp.10-11. Petitioner requested two witnesses and waived his right to a staff representative. Id.

Petitioner's DHO hearing was held on January 9, 2018 at 4:35 p.m. Id., p.2. The DHO Report indicates that Petitioner stated that he understood his rights and raised no issues about the disciplinary process. Id. He denied the charged stating, "Jones did not see me and I did not drop a phone in the bucket; I have never had an issue with Jones." Id. The two witnesses Petitioner requested made statements, each stating that they witnessed the officer leave after patting down Petitioner. Id. The DHO considered the evidence, including the chain of custody log, photo sheet with pictures depicting the cell phone, Petitioner's statement and the statements of his witnesses, and he found that Petitioner committed the prohibited act as charged. Id., p.3. The DHO noted that he did not find Petitioner credible and his witnesses did not provide exculpatory evidence. Id. The DHO also noted that while the Incident Report was re-written and re-processed through the disciplinary process, that did not violate Petitioner's due process rights

3

since he was "provided sufficient notice concerning the allegations against you, and you were able to prepare a defense."  Id.  The DHO sanctioned Petitioner to 40 days disallowance of Good Conduct Time and six months loss of commissary, email, phone and visiting privileges effective January 9, 2018, through July 8, 2018.  Id., p.4.  Petitioner was provided with a copy of the DHO Report on March 28, 2018.  Id.  He unsuccessfully administratively appealed the DHO's decision.  (Resp't Exh. 1; ECF No. 17-1.)

In his Petition for Writ of Habeas Corpus, Petitioner makes several procedural challenges to his disciplinary hearings.  (ECF Nos. 3, 4.)  Respondent filed an Answer to the Petition on June 12, 2019.  (ECF No. 17.)  This matter has been fully briefed by the parties and is now ripe for disposition.

**B. Discussion**

**1. Procedural Standards Governing Prison Disciplinary Proceedings**

Petitioner makes several procedural challenges to his prison disciplinary proceedings claiming that his due process rights were violated because staff did not have the authority to rewrite the Incident Report, staff failed to comply with the 24-hour mandate for writing and delivering the Incident Report, and the case manager was not a certified DHO and did not sign the DHO Report.  (ECF Nos. 3, 4.)

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The United States Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to:  (1) appear before an impartial decision-making body; (2) advance written notice of the disciplinary charges no less than 24 hours before the disciplinary

4

hearing; (3) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; (4) assistance from an inmate representative, or substitute aid from staff, if the charged inmate is illiterate or if complex issues are involved; and (5) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 564, 566, 570-71.

In the federal prison system, the Bureau of Prisons ("BOP") has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §§ 541.1-541.8. These guidelines are specifically tailored and designed to meet or exceed the due process requirements outlined by the Supreme Court in Wolff, supra. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation.[5] 28 C.F.R. § 541.5(a)-(b). After investigation, the incident report is referred to a UDC, consisting of two or more staff designated by the Warden for an initial hearing. 28 C.F.R. § 541.7. The inmate, in turn, is entitled to appear before the UDC during its review of the incident report, except during UDC deliberations or when the inmate's presence would jeopardize institution security, and the inmate is entitled to make a statement and present documentary evidence. 28 C.F.R. § 541.7(d)-(e). The UDC may either reach a finding regarding whether a prohibited act was committed or refer the case to the DHO for further hearing. 28 C.F.R. § 541.7(f)-(g). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act.

---

[5] The inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident." 28 C.F.R. § 541.5(a).

28 C.F.R. § 541.8(a).  The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8.

Throughout this hearing process, the inmate is provided with a series of procedural rights.  For example, the inmate is entitled to notice of the alleged infraction.  Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing.  28 C.F.R. § 541.8(c).  The inmate is also entitled to assistance at DHO hearings.  In particular, the Warden must provide the inmate with a full-time staff member to represent him at the DHO hearing.  28 C.F.R. § 541.8(d).

The inmate also has a series of procedural rights at the hearing itself.  At the DHO hearing, the inmate is entitled to make a statement and present documentary evidence.  28 C.F.R. § 541.8(f).  The inmate also has the right to submit names of requested witnesses and have them called to testify.  While the DHO need not call repetitive witnesses or adverse witnesses, the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available.  28 C.F.R. § 541.8(f).  The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized.  28 C.F.R. § 541.8(e).

In addition, the regulations prescribe procedural standards for DHO decision-making.  The regulations require that the DHO must consider all evidence presented at the hearing.  The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence.  28 C.F.R. § 541.8(f).  Finally, the DHO must prepare a record of the proceedings.  This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence

relied upon by the DHO. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations, they fully satisfy the requirements of procedural due process in this prison disciplinary setting. *See*, *e.g.*, Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007) (same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006) (same).

Judged against these standards, Petitioner's procedural challenges to his prison disciplinary proceedings simply fail. In this case, the record reflects that the DHO followed all of the procedures outlined in the regulations and as required by Wolff. Specifically, Petitioner was given a copy of the Incident Report, which provided him with notice of the charge against him, on December 28, 2018, and again on December 30, 2018, after the Incident Report was rewritten on the proper form. This was well in advance of his disciplinary hearing before the UDC on January 8, 2018 and the DHO on January 9, 2018, as called for in Wolff. Also in accordance with Wolff, Petitioner was offered, but declined, assistance from an inmate representative and he was provided with the opportunity to call witnesses and present documentary evidence. Ultimately, he was provided with a written report of the DHO's decision, which included a statement that outlined the reasons why he found Petitioner committed the prohibited act, as well as the reasons why the sanctions were imposed. Given that Petitioner was afforded the minimum procedural protections set forth in Wolff, the Court finds that the DHO fully satisfied the requirements of due process in this case.

## 2. **Substantive Standards Governing DHO Decisions**

Although Petitioner does not appear to attack the substance of the DHO's decision, the Court finds that there was "some evidence" to support the finding of the DHO. In this regard, a prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48, 51 (3d Cir. 1992); Thompson, 889 F.2d at 501.

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986). As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review, and

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456. Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the

8

evidentiary challenge by the petitioner and uphold the finding of the DHO.  Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d at 501; Freeman, 808 F.2d at 954.

Here, there was "some evidence" to support the DHO's finding that Petitioner committed the prohibited act.  When Petitioner extended his arms, the reporting officer observed Petitioner drop the cell phone and a charger into a bucket, from where the officer retrieved it.  The officer preserved the chain of custody and took pictures of the cell phone.  Petitioner's witnesses failed to exculpate him and even corroborated parts of the Incident Report.  Thus, even though Petitioner does not make an evidentiary challenge to the DHO's decision, the decision nonetheless comports with the minimum requirements of procedural due process standards.

### 3. The Petition is Now Moot

As an alternative basis for dismissal, the Court notes that the Petition is now moot.  In this regard, Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties.  U.S. CONST. Art. III, § 2; *see* Chong v. District Dir., I.N.S., 264 F.3d 378, 383 (3d Cir. 2001) ("[T]he exercise of judicial power depends upon the existence of a case or controversy.").  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . the parties must continue to have a personal stake in the outcome of the lawsuit." Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990) (internal citations and quotations omitted).  *See also* Steffel v. Thompson, 415 U.S. 452, 459 (1974) (the adjudicatory power of a federal court depends upon "the *continuing* existence of a live and actual controversy") (emphasis in original).  "Past exposure to illegal conduct is insufficient to sustain a present case or controversy . . . if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F.Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). A court's ability to grant effective relief lies at the heart of the mootness doctrine. County of Morris v. Nationalist Mvmt., 273 F.3d 527, 533 (3d Cir. 2001); *see also* In re Material Witness Warrant Nichols, 77 F.3d 1277, 1279 (10th Cir. 1996) (noting that mootness means that it would be impossible to grant the petitioner any meaningful relief on his claims). Thus, "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).

Here, Petitioner seeks for this Court to compel the BOP to expunge his Incident Report and restore the loss of 40 days good conduct time. However, Petitioner's criminal docket reveals that on August 17, 2020, he was granted compassionate release and sentenced to time served. *See* United States v. Mitchell, 1:12-cr-00550, ECF No. 67 (D. Md. Aug. 17, 2020). Indeed, the BOP's website reveals that Petitioner was released from custody on August 18, 2020. At this point, Petitioner's good time credits cannot be restored because he has completed serving his term of imprisonment. Once Petitioner served his term of imprisonment and was released upon its completion, his good time credits ceased to have any effect. Accordingly, the Petition is subject to dismissal because it is moot. *See*, *e.g.*, Scott v. Schuykill FCI, 298 F. App'x 202, 204 (3d Cir. 2008). A separate Order will follow.

                                              Lisa Pupo Lenihan
                                              United States Magistrate Judge

Dated: August 19, 2020

Cc:    Kemp Earl Mitchell
       31413-037
       FCI Loretto
       P.O. Box 1000
       Cresson, PA  16630

       Counsel of record
       (Via CM/ECF electronic mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEMP EARL MITCHELL, ) | |
| ) | Civil Action No. 18 – 223J |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| ERIC BRADLEY, *Warden*, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

   **AND NOW**, this 19th day of August, 2020, for the reasons set forth in the accompanying Memorandum Opinion,

   **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 3) is **DENIED**.  Alternatively, it is **DISMISSED** as moot.

   **IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

   **AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, Petitioner has sixty (60) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:   Kemp Earl Mitchell
      31413-037
      FCI Loretto

P.O. Box 1000
Cresson, PA  16630

Counsel of record
(Via CM/ECF electronic mail)